# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VARUN CHOPRA, et al.,

       Plaintiffs,

                              Case No. 16-13915

v.

PHYSICIANS MEDICAL CENTER, LLC, et al.,

       Defendants.

_____/

### OPINION AND ORDER 1) GRANTING DEFENDANTS' MOTION TO DISMISS; 2) DENYING PLAINTIFFS' MOTION TO AMEND; 3) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; 4) GRANTING PLAINTIFFS' MOTION FOR CONTEMPT; 5) GRANTING PLAINTIFFS' REQUEST TO FILE SUPPLEMENTAL BRIEF; 6) DENYING AS MOOT PLAINTIFFS' MOTION TO CORRECT CERTAIN PLEADINGS; AND 7) DENYING DEFENDANTS' MOTION TO VACATE

Pending before the court are a Motion to Dismiss by Defendants (Dkt. #17), Plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. #25), Plaintiffs' Motion for Preliminary Injunction (Dkt. #31), and a number of motions filed by either party regarding discovery disputes (Dkts. ##47, 49, 50, 53). After reviewing the briefs, the court has determined that a hearing is not necessary.

For the following reasons, the court will grant Defendants' motion to dismiss, deny Plaintiffs' motion for leave to file an amended complaint, deny Plaintiffs' motion for preliminary injunction, grant Plaintiffs' motion for sanctions, grant Plaintiffs' request to file a supplemental brief, deny as moot Plaintiffs' motion to correct certain pleadings, and deny Defendants' motion to vacate.

## I. BACKGROUND

Plaintiffs allege that Varun Chopra sought to participate in the residency program

at Physicians Medical Center, LLC, d/b/a Pontiac General Hospital ("the Hospital"), and that Defendants induced his parents, who are Canadian nationals, to make a $400,000 donation to the Hospital to secure his admission. They claim that Varun Chopra was summarily dismissed from the program and their attempts to secure a refund of their donation have been unsuccessful. Their complaint alleges claims for breach of contract, fraud in the inducement, and civil conspiracy.

## A. Motion to Dismiss

Defendants filed a motion to dismiss for failure to state a claim as to the fraudulent inducement and civil conspiracy claims. Defendants argue that the factual allegations supporting the fraudulent inducement claim are conclusory and insufficient to satisfy the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b). Further, they argue that Plaintiffs cannot sustain a claim for an independent tort when their theory of the case is really one of breach of contract. Since the fraud claims warrant dismissal, Defendants reason that the civil conspiracy claims predicated upon Defendants having "acted in concert to defraud Dr. Chopra and Dr. Chopra's parents" is also defective.

Plaintiffs respond that Defendants' brief relies on factual assertions outside of, or inconsistent with, the allegations contained within the complaint, despite the standard on a motion to dismiss that a court take all facts as alleged in the complaint to be true, drawing all reasonable inferences in favor of plaintiffs. Contrary to Defendants' arguments, they insist that the allegations within the complaint have the requisite specificity to satisfy Federal Rule 9(b), and that, to the extent that they do not, the court

should grant leave for Plaintiffs to amend their complaint. They also argue that a fraudulent inducement claim, unlike other torts, may be pled in the alternative along with a breach of contract claim.

In reply, Defendants assert that, in contravention of controlling Sixth Circuit precedent regarding the pleading standard for fraud, Plaintiffs have not identified the exact statements that were allegedly fraudulent, precisely which of the Defendants made the false statements, the precise date or location of the statements, or the method by which the statements were communicated. They also argue that the court may consider their claim that Varun Chopra withdrew from the program because it is discussed in other pleadings. Defendants urge the court to find that Plaintiffs cannot plead fraudulent inducement where their claim is properly one of breach of contract, and thereby adopt a view that Plaintiffs "have been caught with their pants down," (Dkt. #26, Pg. ID 309), having relied upon representations during negotiations of the residency agreement but not insisting upon the inclusion of the donation within its terms. Should the court agree that the claims are faulty, they should be dismissed with prejudice, according to Defendants, because Plaintiffs did not file a motion seeking leave to amend,[1] and the amendments would be futile because Plaintiffs presumably have no pertinent factual allegations to add.

---

[1]At the time Defendants filed their reply, Plaintiffs had filed a motion for leave to amend their complaint adding claims for statutory and common law conversion just one day before. The proposed amendments do not appear relevant to the fraud claims.

## B. Motion for Leave to Amend the Complaint

Plaintiffs seek leave to file an amended complaint adding claims of conversion both common law and statutory, MCL § 600.2919a, arguing that additional information obtained in the course of discovery in addition to recently discovered case law supports a claim for conversion in light of the policy favoring liberal amendments to pleadings under Federal Rule of Civil Procedure 15. Defendants argue that leave to amend should be denied because it would be futile to add the claims as they would not survive a motion to dismiss because, like the fraud claim discussed above, they are "inextricably interwoven with plaintiff's claim of breach of contract." (Dkt. #28, Pg. ID 323.)

They also contend that a common law conversion claim cannot exist where a plaintiff alleges that a defendant merely denied a request to give back money paid to it. As to the individual Defendants, they argue that Plaintiffs' proposed amended complaint does not allege that they personally, but only the Hospital denied the return of the money. The Hospital, meanwhile, was named as payee on the checks and therefore held the money as its personal property–something that it could not wrongfully convert–according to Defendants. Reading statutory conversion as applicable only to actions such as buying, receiving, or aiding in the concealment of converted property rather than the actual taking or holding, Defendants argue that the statute does not apply to the Hospital's alleged conversion and retention of the donated funds. Finally, they contend that statutory conversion requires that Defendants convert the property to their own use, which is not alleged in this case.

## C. Motion for Preliminary Injunction

Plaintiffs request that the court order Defendants to post a bond with the court in the amount of $400,000 to secure any judgment rendered by this court in the event of Defendants' insolvency. Plaintiffs argue that it is a matter of public record that the Hospital is in dire financial straits, a claim supported by deposition testimony. They argue that they are likely to succeed on their claims of fraudulent inducement and breach of contract because the Hospital misled them about its intentions to perform under the residency agreement and wrongly retained their donation despite their entreaties to the contrary. They contend that the court should disregard the integration clause within the agreement, because fraud in the inducement generally invalidates such clauses. At the same time, they view the harm to the Hospital as minimal in light of the harm to the Chopras, who may never recover the donated funds in the event that they are successful in the instant case, or the public interest in creating negative incentives to engage in the complained-of behavior.

Defendants respond that Plaintiffs are unlikely to succeed on their claims because Varun Chopra voluntarily left the Hospital's residency program. They also point out that Plaintiffs will not otherwise suffer irreparable harm because the Hospital has a net equity of approximately $1.7 million and is far from insolvent, though it will suffer irreparable harm of its own if it is required to post such a large bond, as it will likely have to reduce services or delay expansions. Such a scenario is also avowedly contrary to the public interest.

Plaintiffs assert that they are likely to succeed as Defendants' arguments against

the viability of their fraudulent inducement and conversion claims are faulty. Further, they offer that the view that Plaintiffs spontaneously donated a huge sum to the Hospital without any connection to Varun Chopra's participation in the residency program shortly thereafter defies explanation. They also cast doubt upon the Hospital's ability to pay a judgment and the idea that the donation would have been used to expand hospital services.

Plaintiffs have also filed a motion for leave to file a supplemental brief identifying additional deposition testimony suggesting that the Hospital terminated Varun Chopra's participation in the residency program unilaterally. (Dkt. #49.) Defendants opposed the motion, arguing that it is unnecessary for the court to rule. (Dkt. #55.) In the interest of affording Plaintiff a full hearing the court will grant the motion, has deemed the proposed brief as filed, and considers it in making its determination here.

### D. Motion for Reconsideration

This court previously granted Plaintiffs' motion to compel responses to interrogatory requests and denied Defendants' motion for sanctions under Federal Rule of Civil Procedure 11. (Dkt. #45.) Defendants now attack the order in a Motion to Vacate (Dkt. #53), which this court will construe as a motion for reconsideration. Defendants argue that because Plaintiffs' initial motion for sanctions did not contain a certification of having attempted to confer in good faith, it was error for the court to grant the motion and order Defendants to serve complete interrogatory responses along with payment of costs incurred for a cancelled deposition. They assert that the court's treatment of whether its conduct in cancelling depositions was "substantially justified" was insufficiently brief.

Plaintiffs reply that opposing counsel had two conversations during which counsel for Plaintiffs implored Defendants not to cancel the depositions but counsel for Defendants was obstinate and told him that he should "do what [he] has to do."

### E. Motion for Contempt and Sanctions

Plaintiffs ask that the court find Defendants in contempt and award sanctions accruing daily for their failure to comply with the court's order that they provide complete answers to interrogatory requests by May 12, 2017. (*See* Dkt. #45.) They allege that Defendants provided answers on May 12, 2017, which did not include the responsive information or documents.

The pertinent portions of Plaintiffs' interrogatory requests asked Defendants to identify the physicians who had joined the Hospital's residency program since January 1, 2015, to specify any donations to the Hospital associated with those physicians, and to provide any related documents. Defendants' responses directed Plaintiffs to a document bearing Bates stamp OMPC 115. (Dkt. #47-3.) Yet Plaintiffs argue that deposition testimony revealed that the document did not list the names of any resident physicians. During the May 16th deposition, counsel for Defendants provided a new list bearing hand-written Bates stamps OMPC 117-119 and represented that it identified the current residents at the Hospital, though it does not contain some requested information such as phone numbers[2] or donation amounts. (*See* Dkt. #47-4.) Plaintiffs also indicate that

---

[2]On June 1, 2017, after the filing of the motion for contempt, Defendants apparently served Plaintiffs with a list of phone numbers for the resident physicians during years 2016 through 2017. (*See* Dkt. #52-5.) Like those before it, this effort is insufficient in scope and late in timing.

Defendants completely failed to respond to Interrogatory Request No. 4 seeking the identification of all statements by Varun Chopra indicating his desire to withdraw from the residency program.

Defendants respond that they were reasonably diligent in trying to comply with the court's order. They allege that Plaintiffs reserved their complaints about the discovery responses so that they could ambush deponents with questions they could not answer, and after being given OMPC 117-119 listing current resident physicians during the deposition, counsel for Plaintiffs refused to question the deponent on it. Having agreed that Interrogatory No. 4 was unanswered, Defendants aver that its counsel told Plaintiffs' counsel to contact Mr. Zogheib to obtain the information but he never did. Defendants claim to have then provided a supplemental response via email on May 18, 2017. They argue that deposition testimony revealed that OMPC 115 was a list of all donations made to the Hospital and was prepared by the Accounting Department, to whom Plaintiffs should have directed their requests to identify which names were those of residents. In reply, Plaintiffs argue that Defendants still have not complied with the court's order, and that their gamesmanship in shirking their discovery obligations is laid bare by deposition testimony.

## II. STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right

to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The court views the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Furthermore, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment," *Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Sixth Circuit has "further interpreted Rule 9(b) to require that a plaintiff allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotations omitted). A state claim of fraud, once removed to federal court, is "required to comply with Rule 9(b)," but is also judged "[u]nder [state] law." *See, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).

## B. Motion for Leave to Amend the Complaint

Rule 15 governs when a pleading may be amended. After twenty-one days of serving a pleading or service of a responsive pleading, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15 (a)(1)–(2). Courts "should freely give leave when justice so requires." *Id.* Leave should be freely given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Whether an amendment is granted is subject to the district court's discretion. *Id.*

## C. Motion for Preliminary Injunction

In *Silverman v. Summers*, the Sixth Circuit described the rubric by which district courts should assess requests for preliminary injunction:

> The district court must consider and balance four factors in ruling on an application for a preliminary injunction: 1) whether the plaintiff has a strong likelihood of success on the merits; 2) whether the plaintiff would suffer irreparable injury in the absence of the injunction; 3) whether the injunction would cause substantial harm to others; and 4) whether the injunction would serve the public interest.

28 F. App'x 370, 372-73 (6th Cir. 2001) (citing *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)).

## D. Motion for Reconsideration

Subject to the court's discretion, a motion for reconsideration shall be granted only if the movant "demonstrate[s] a palpable defect by which the court and the parties . . . have been misled" and "show[s] that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest or plain.'" *Buchanan v. Metz*, 6 F. Supp. 3d 730, 752 (E.D. Mich. 2014) (quoting *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004)). The court "will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court." E.D. Mich. L.R. 7.1(h)(3).

Under Federal Rule of Civil Procedure 60(b), a federal district court will grant relief from a final judgment or order only upon a showing of one of the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new

trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic),

misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5)

the judgment has been satisfied, released, or discharged; it is based on an earlier

judgment that has been reversed or otherwise vacated; or applying it prospectively is not

longer equitable; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

### E. Motion for Contempt and Sanctions

The district court is afforded sound discretion in deciding a contempt petition.

*Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir.

2003). There is no doubt that the due process safeguards customarily applied in civil

litigation apply to civil contempt proceedings. The party charged with contempt is entitled

to proper notice, an impartial hearing, and an opportunity to present a defense. *NLRB v.

Cincinnati Bronze Inc.*, 829 F.2d 585, 589 (6th Cir. 1987). Generally, civil contempt

proceedings are summary in nature and "[t]he full panoply of evidentiary and procedural

safeguards of criminal proceedings or trial need not be employed." *Nabkey v. Hoffius*,

827 F.Supp. 450, 452 (W.D. Mich. 1993).

"When a court seeks to enforce its order or supervise its judgment, one weapon in

its arsenal is contempt of court." *Gary's Elec. Serv. Co.*, 340 F.3d at 378. Although the

power to punish a party for contempt should not be invoked lightly, the Supreme Court

has explained that this power "is a necessary and integral part of the independence of

the judiciary, and is absolutely essential to the performance of the duties imposed on

them by law. Without it [the courts] are mere boards of arbitration, whose judgments and

decrees would be only advisory." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418,

450, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

To hold a litigant in contempt, the movant must provide clear and convincing evidence that shows that the charged party violated a "definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (quoting *Cincinnati Bronze*, 829 F.2d at 591).

Once the movant establishes a prima facie case of contempt, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (citing *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983)). To satisfy this burden, the non-movant "must show categorically and in detail why he or she is unable to comply with the court's order." *Id.* (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). When evaluating an alleged contemnor's failure to comply with a court order, the court "also consider[s] whether the [accused] 'took all reasonable steps within [his] power to comply with the court's order .'" *Id.* (citing *Peppers v. Barry*, 873 F.2d 967, 968, 969 (6th Cir. 1989)).

### III. DISCUSSION

### A. Motion to Dismiss

The complaint's allegations regarding the fraudulent statements can be summarized as claiming that Defendants spoke to Plaintiffs prior to the execution of the residency agreement and stated that the Hospital would not sign it unless Plaintiffs first

made a donation of $400,000.[3]  None of the requisite specificity is present. Defendants

and the court are left guessing as to whether Sanyam Sharma, Priyam Sharma, or some

other representative for the Hospital made the described statement, what precisely the

statement was, the contextual information of when or where it was made, or exactly how

the statement was fraudulent. For example, if the statement was "the Hospital will not

enter the residency agreement prior to a donation of $400,000," or even "if you make a

donation of $400,000, the Hospital will enter into the residency agreement," then it was

not even a false statement, because the Hospital did not enter into the residency

agreement until after Plaintiffs made the donation. Plaintiffs' conclusory allegations

within the complaint are insufficient to meet the standard under Federal Rule 9(b) and

must be dismissed. As Plaintiffs concede, since "the fraudulent inducement claim [is]

dismissed by the Court, there [is] no basis for the civil conspiracy claim (absent the

existence of another tort claim against Defendants.)" (Dkt. #19, Pg. ID 204.) As the court

will deny leave to amend the complaint to add the conversion claims for reasons

described below, no other tort claim exists and the court will dismiss the claim for civil

conspiracy as well.

Normally dismissal for insufficient particularity is made without prejudice.

However, "a complaint may be dismissed without leave to amend where the amendment

would be futile." *DBI Investments, LLC v. Blavin*, 617 F. App'x 374, 385 (6th Cir. 2015)

---

[3]At another point the complaint alleges generally that Defendants "made the material representation to the Plaintiffs that, upon the payment of $400,000, and only upon the payment of $400,000, Dr. Sharma would be entered into the residency program." (Dkt. #1, Pg. ID 6.)

(citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir.2002)). Here the claim for fraud is

futile because it falls within Michigan's economic loss rule. Interpreting Michigan

precedent on the doctrine, the Sixth Circuit explained:

> Michigan courts recognize fraudulent inducement as an exception to the
> economic loss doctrine. The court in *Huron Tool* quoted with approval the
> observation that fraud in the inducement "addresses a situation where the
> claim is that one party was tricked into contracting" and is "based on
> pre-contractual conduct which is, under the law, a recognized tort." Claims
> of fraud "extraneous to the contract" are permissible, whereas "fraud
> interwoven with the breach of contract" cannot support an independent
> claim.

*DBI Investments*, 617 F. App'x at 381–82 (citations omitted). In differentiating between

"fraud extraneous to the contract" and "fraud interwoven with the breach of the

contract[,]" the court in *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*,

indicated that "[w]ith respect to the latter kind of fraud, the misrepresentations relate to

the breaching party's performance of the contract and do not give rise to an independent

cause of action in tort." 209 Mich. App. 365, 373, 532 N.W.2d 541, 545 (1995).

Plaintiffs' theory is essentially that Varun Chopra was denied his rightful place in

the residency program despite the donation presumably intended to secure it for him.

Plaintiffs are not alleging a "bait-and-switch scenario" like that described in

*Llewellyn-Jones v. Metro Prop. Grp., LLC*, where "defendants showed the investors,

including the plaintiffs, properties that had been refurbished, but were not actually the

properties for sale . . . [and] mailed the plaintiffs fraudulent photos of the insides of

homes that were different than the homes for sale." 22 F. Supp. 3d 760, 779 (E.D. Mich.

2014). Instead, Plaintiffs are complaining that Defendants failed to live up to their end of

the bargain—that Varun Chopra would participate in the residency program. As further amendment as to the fraud claim will be futile, dismissal will be with prejudice. In light of Plaintiffs' inability to establish another viable tort theory now after the close of discovery, dismissal of the civil conspiracy charge will be made with prejudice as well.

Plaintiffs have also filed a Motion to Permit Correction of Certain Pleadings (And One Brief) Following Defendants' Rule 11 Demand. (Dkt. #50.) This motion is primarily aimed at adding some additional detail to the complaint, to wit that Priyam Sharma represented that the Hospital would accept Varnum Chopra if and only if the donation was paid, and that Sanyam Sharma was aware of this demand when he signed the residency agreement on behalf of the Hospital. The proposed amendments are still insufficient to bring the complaint within the bounds of Federal Rule 9(b), and it does not save their claims from the maw of the economic loss rule. The court will deny this motion as moot, but it will treat the reply brief in question as if it had been so amended in the event this court must consider another Rule 11 motion for sanctions.

### B. Motion for Leave to Amend the Complaint

The economic loss rule bars Plaintiffs' fraud claims, and their claims for statutory and common law conversion fall for the same reason. "Michigan courts must inquire whether the legal duty allegedly violated by a defendant arises separately and distinctly from a defendant's contractual obligations." *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 583 (6th Cir. 2016) (citing *DBI Invs., LLC v. Blavin*, 617 F. App'x. 374, 381 (6th Cir. 2015)). Here, the identified duties under a conversion theory are neither separate nor distinct from contractual duties. The allegations in the proposed amended complaint that

are offered to support a claim for common law conversion are that Defendants obtained the donation through fraud—a theory which the court rejected above—and that even if not obtained via fraud, the donation should have been returned to Plaintiffs after the Hospital barred Varun Chopra from participating in the residency program. (Dtk. #25-2, Pg. ID 292.) The latter duty-to-return contention is entirely consistent with a view that the Hospital was in material breach of its contract with Plaintiffs and that Plaintiffs were entitled to their damages (*i.e.*, return of the donation).

Compare this to the facts in *Tyson*, where the Sixth Circuit reversed the district court's finding that the economic loss doctrine precluded a claim of conversion where a car dealer wrongly repossessed a car that had already been delivered and titled to the buyer. 836 F.3d at 583.

No separate tort arises in refusing the request of a contractual counter-party to return the contractual consideration because of an alleged material breach or anticipatory repudiation. *See Llewellyn–Jones*, 22 F.Supp.3d at 778 ("The doctrine is animated by the idea that tort remedies should not bail out parties who could have anticipated losses caused by failed performance and negotiated an appropriate response."). Put another way, had Defendants performed on the contract the way that Plaintiffs allege that they should have, Plaintiffs would have no wisp of a claim for conversion.

The proposed amendments would not survive a motion to dismiss and are futile. Leave to file an amended complaint will be denied.

## C. Motion for Preliminary Injunction

Even were this court to construe all of the factual assertions in Plaintiffs' favor, the facts would not warrant an injunction requiring the Hospital to post the requested bond.[4] The likelihood of success prong does not favor Plaintiffs, as the court will dismiss their claims for fraudulent inducement and civil conspiracy and deny as futile their request to amend their complaint to add claims of common-law and statutory conversion. The remaining claim for breach of contract, though strengthened by this court's award of sanctions *infra*, is still uncertain to succeed. Plaintiffs will have to establish a material breach on behalf of Defendants, and whether Varun Chopra voluntarily withdrew from the residency program remains an open question.

The harm to Plaintiffs or third parties and the public interest are at best factors in equipoise. Should the Hospital be unable to pay the judgment, Plaintiffs will doubtless be significantly burdened. However, if the Hospital is as close to insolvency as Plaintiffs claim, then requiring it to post the bond may indeed tip the scales and affect its ability to care for its patients. The court will not cripple a struggling hospital to bolster Plaintiffs' mediocre odds of obtaining and enforcing a judgment in their favor. To the extent that Plaintiffs now claim that the Hospital's alleged solicitation of donations is illegal or unethical, it is not obvious that Plaintiffs' hands are entirely clean. Plaintiffs do not explain why they would have structured their payment to the Hospital—something in this case functionally more like tuition—as a no-strings-attached donation separate from the

---

[4]Much of the parties' briefs on this motion was directed at quibbling over the contents of one another's supporting affidavits. Because the court finds the affidavits to be more or less irrelevant to its conclusion, it will not discuss the dispute in detail.

formal residency agreement. As no factor strongly favors Plaintiffs, the court will deny the request for a preliminary injunction.

## D. Motion to Reconsider

Defendants' motion for reconsideration is entirely without merit. Attached to Plaintiffs' original motion to compel is an email chain showing an exchange between counsel for the parties on the subject of the interrogatories (Dkt. #36-4), a letter from Defendants regarding the interrogatory requests and their objections to the deposition of a corporate representative of the Hospital (Dkt. #36-5), and a signed and notarized affidavit of Plaintiffs' counsel attesting to the facts contained within the brief supporting the motion for sanctions—including the abrupt cancellation of the depositions that were the subject of the monetary sanctions and that counsel for Defendants had told him to "do what you have to do[,]" (Dkt. #36-7). The certification requirement of Federal Rule 37 is not so rigid that it requires more than this mounting pile of evidence and attestations. For example, despite affirming the district court's denial of sanctions on other grounds, the Sixth Circuit in *Lott v. Coyle*, stated that:

> Second, it is undisputed that [plaintiff]'s counsel attached to [plaintiff]'s motion a letter to the prosecutor detailing counsel's difficulty in obtaining records from the City of Cleveland Police Department. We see no reason why such a letter would not qualify as the requisite good-faith certification from counsel.

261 F.3d 594, 604 (6th Cir. 2001). Similarly, there was no error in this court's previous order deeming the certification requirement met.

Nor was the court mistaken in its conclusion that cancelling the depositions on short notice was not substantially justified. The Supreme Court described the history of

the "substantially justified" language in Federal Rule 37 as evincing the rules committee's decision to encourage sanctions for discovery misdeeds:

> While the amended Rule retained the substantial justification requirement, the placement of the requirement was changed so that the Rule provided that the district court, upon granting the motion to compel, "shall" impose the sanction unless it found that the losing party's conduct was "substantially justified." The change in placement signaled a shift in presumption about the appropriateness of sanctions for discovery abuses.

*Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 208 n.5 (1999). Moreover, the depositions at issue were scheduled with significant participation of this court to settle scheduling squabbles among counsel. Reasonable people would not differ with this court's criticism of Defendants' decision to unilaterally cancel such depositions less than 24 hours before their commencement purportedly to allow Defense counsel time to review the state of the law on preserving the Fifth Amendment privilege against self-incrimination. Plaintiffs' allegations of conspiratorial thievery had been on the table in one way or another since the commencement of the case. No reasonably competent attorney, in light of the allegations in the complaint and elsewhere, would have relied upon a frantic eleventh-hour study session to become informed about basic Fifth Amendment law. Defendants have identified no palpable error in the court's opinion or anything else justifying relief from it. The court will deny the motion for reconsideration.

### E. Motion for Contempt and Sanctions

As an initial matter, Plaintiffs have established via clear and convincing evidence that Defendants violated this court's order stating that "Defendants shall serve supplemental responses to written discovery before the end of the day on **May 12,**

**2017**." (*See* Dkt. # 45, Pg. ID 809 (emphasis in original).) Defendants all but admit that they still have not fully responded to Interrogatory Nos. 1 or 2, nor the associated request for document production. Defendants appear to concede outright that OMPC 115 is not responsive, (*See* Dkt. #51, Pg. ID 1008), characterizing it as containing the names of *all donors* to the Hospital rather than *all residents*. Even the later-produced document, OMPC 117-119, purports to cover only *current residents*, along with names, addresses, and positions. It does not include requested information such as phone numbers and amounts of any "donations," nor does it extend back to January 1, 2015 as requested.

Even assuming that the supplemental response to Interrogatory No. 4 is adequate, Defendants admit that it was first served on March 18, 2017, nearly a week past the May 12, 2017 deadline set by this court's order.

The court rejects Defendants' arguments that *Plaintiffs* should have been more diligent in contacting individual employees of the Hospital to follow up on discovery that the court had ordered *Defendants* to produce in full several days before the deposition. If Plaintiffs could have obtained the discovery by diligently hunting down the correct Hospital employee or official, then Defendants could have done so just as well. That they did not is precisely why they have neither taken "all reasonable steps" to comply with the court's order, nor shown that compliance is currently impossible. When confronted with a similar argument for having taken all reasonable steps, the Sixth Circuit stated:

> Neither can we accept [defendant]'s contention that the district court's finding of civil contempt impermissibly rested upon discovery obligations that he was unable to fulfill. It was [defendant]'s burden to produce evidence in support of a claimed inability to comply with the district court's orders to provide discovery, and he was obliged to make this showing

"categorically and in detail[.]" Moreover, the "test is not whether [defendant] made a good faith effort at compliance," but rather whether he "took all reasonable steps within [his] power to comply with the court's order." [Defendant] fell far short of such a showing here, where he made inconsistent statements regarding his ability to answer the Government's interrogatories and provide the requested documentation, and where he generally offered frivolous objections and semantic quibbles in lieu of cogent argument and evidence as to the steps he had taken to comply with the court's instructions and the impediments to any further compliance.

*United States v. Conces*, 507 F.3d 1028, 1043 (6th Cir. 2007). Here as well Defendants provide the court with insufficient details about the steps that they have taken to comply with the court's order but offer a surfeit of excuses, sophistry, and finger-pointing.

Defendants are in contempt and a sanction is certainly warranted, but the court will stop short of fine or imprisonment at this time. *See* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."). Imprisonment should be reserved for repeated and more patently contumacious behavior, and a monetary sanction is also less than ideal where Plaintiffs themselves argue that Defendants are near insolvency.

The deadline for dispositive motions nonetheless looms large in the face of absent discovery responses. Federal Rule of Civil Procedure 37 allows the court to award sanctions for "failure to obey an order to provide or permit discovery" in the form of "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[.]" Fed. R. Civ. P. 37(b)(2)(A)(i). "With a rule as flexible as Rule 37, inevitably a broad discretion must be given the trial judge with regard to sanctions." 8B Charles Alan Wright et al., Federal

Practice and Procedure § 2284 (3d ed. 2010).

In *Fencorp, Co. v. Ohio Kentucky Oil Corp.*, defendants argued that "the district court erred in imposing 'drastic' discovery sanctions by finding the defendants had engaged in a general solicitation, rendering their federal preemption defense void." 675 F.3d 933, 942 (6th Cir. 2012). The Sixth Circuit found that the district court did not abuse its discretion in awarding the sanction where:

> The district court found that defendants had disobeyed three separate discovery requests for documents related to OKO's general solicitation. After defendants objected, the district court determined the materials were discoverable. But defendants did not produce the documents. Then, at a later hearing, an OKO official testified that, although the materials requested still existed, there had been a company-wide order to destroy them, and no official had ordered that the documents be made available to the plaintiffs.

*Id.*

Here as well Defendants ignored requests for documents or provided responses that were essentially worthless despite this court's order. Though no suggestion has been made that the Hospital attempted to destroy the requested information, it appears that Defendants have to date resolved not to provide documents and information which, in the court's estimation, should have been trivial for it to prepare with any reasonable diligence.

By contrast, the court in *Gen. Ret. Sys. of the City of Detroit v. Alamerica Bank*, granted a monetary sanction of $25,000 against defendant and counsel on a joint and several basis rather than draw an adverse inference or striking defenses, because the latter sanctions would "essentially cripple defendants' ability to defend the case." No. 14-10032, 2016 WL 8243173, at *3 (E.D. Mich. Mar. 7, 2016), *reconsideration denied*,

No. 14-10032, 2016 WL 1746017 (E.D. Mich. May 3, 2016). The facts of the misconduct were quite similar to those facing the court here:

> Over the course of discovery, the Court has extensively engaged with counsel and observed their behavior regarding discovery issues. It is clear to the Court that there are very likely documents in defendants' control that were responsive but not produced . . . In addition to several telephonic conferences on the record to address the issue, in which the Court ordered defendants to produce certain documents and other information, the Court twice had to enter a written order to compel, to no avail.

*Id.* The requested relief truly would have been crippling, for example including that "the at-issue letters contained affirmative and material misrepresentations . . . and that defendants knew or should have known that the above-referenced representations were false when made." In this case, the court finds that it can fashion a sanction that will mitigate the prejudice to Plaintiffs resultant from Defendants' similarly unacceptable discovery conduct but not cripple Defendants' ability to defend against the remaining breach of contract claim.

It appears to the court that the requested information about other resident physicians, focused on a suspected history of "donations" associated with their matriculation into Defendants' residency program, was intended to establish circumstantially that the donations are motivators, an essential part and parcel of the residency agreement.

As a commensurate sanction for Defendants' repeated failure to provide the requested information in this realm, the court shall deem it established that the "donated" funds were in fact a mandatory component of the terms of the residency agreement, and a condition precedent to Plaintiff Chopra's entry in to the residency notwithstanding the

written agreement's integration clause.

Plaintiffs do not appear to contend that the late-served response to Interrogatory No. 4 remains unresponsive, and the court will be satisfied without further sanction at this time.

Federal Rule 37 states that in addition to these sanctions the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Defendants' failure to abide by the court's order was not substantially justified, and nothing suggests that injustice would result from ordering Defendants to compensate Plaintiffs for the costs and attorney's fees associated with filing the instant motion for contempt. The court will once more direct Plaintiffs to submit a supplemental memorandum identifying the costs and fees with substantive time entry descriptions so that the court can assess their reasonableness.

## IV. CONCLUSION

IT IS ORDERED that the Defendants' Motion to Dismiss (Dkt. #17) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend (Dkt. #25) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction (Dkt. #31) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Contempt and Awarding Sanctions (Dkt. #47) is GRANTED.

IT IS FURTHER ORDERED AS A SANCTION, AND DEEMED ESTABLISHED WITHOUT FURTHER PROOF, that the Donated Funds in the amount of $400,000 were in fact an entry fee, and a mandatory component of the terms of the Residency Agreement, operating as a condition precedent to Plaintiff Varun Chopra's entry into Defendants' Residency Program.

IT IS FURTHER ORDERED that Plaintiffs shall file with the court a supplemental memorandum outlining the expenses and fees sought for the courts' consideration.

IT IS FURTHER ORDERED that any provision of the Residency Agreement, including its integration clause, to the contrary of this Order and its sanction provision is of no effect.

IT IS FURTHER ORDERED that Plaintiffs' Request to File Supplemental Brief (Dkt. #49) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Permit Correction of Certain Pleadings (Dkt. #50) is DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Vacate (Dkt. #53) is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:   June 15, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 15, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 982-2422