**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

VARUN CHOPRA, et al.,

       Plaintiffs,

v.                                 Case No. 16-13915

PHYSICIANS MEDICAL CENTER, LLC, et al.,

       Defendants.

_____/

### OPINION AND ORDER DENYING DEFENDANTS' SECOND MOTION TO DISMISS

This breach of contract action was filed almost two years ago after a Hospital refused to return $400,000 to a medical school graduate. The court previously denied Plaintiffs' motion for leave to amend their complaint, concluding that the proposed amendment was unnecessary because it added only "further legal argument and support" for Plaintiffs' breach of contract claim, which had been adequately pled. (Dkt. # 84, Pg. ID 1959.) Defendants now attack that March 23, 2018 order in a Second Motion to Dismiss (Dkt. # 87), which this court will construe as a motion for reconsideration.[1] While responses to motions for reconsideration are not generally permitted, E.D. Mich. L.R. 7.1(h)(2), Plaintiffs properly filed a response because Defendants cast their motion

---

[1] Defendants have a habit of restyling motions for reconsideration using inaccurate motion titles causing the court to pause and reach for the proper standard of review. (*See* Dkt. # 57, 78.) In addition, the court initially struck Defendants' second motion to dismiss for failure to comply with Local Rule 5.1. (Dkt. # 86.) Defendants re-filed their twenty-five page motion asserting it complies with the local rules; however it still does not. Defendants have ignored the requirement that their motion be double-spaced. E.D. Mich. L.R. 5.1(a)(2).

as a Motion to Dismiss. The court, having reviewed the parties' briefs, concludes a hearing is unnecessary. *See* E.D. LR7.1(f)(2). The court will deny Defendants' second motion to dismiss.

## I. BACKGROUND

This dispute arises from Plaintiff Varun Chopra's admission to the residency program at Defendant Physicians Medical Center, LLC, d/b/a Pontiac General Hospital ("the Hospital"), previously known as Oakland Physicians Medical Center. Plaintiffs allege that Varun Chopra and his parents, Plaintiffs' Satish and Poonam Chopra, paid $400,000 at the direction of the Hospital's representatives, Sanyam and Priyam Sharma, in order for the Hospital to sign a residency agreement permitting Varun to participate in its residency program. (Dkt. # 1, Pg. ID 3.) Undisputedly, the Chopras paid $400,000 to Defendant Hospital by two checks. The next day Plaintiff Varun Chopra and Defendant Hospital's representative, Defendant Sanyam Sharma, signed a residency agreement ("the Agreement"), thereby accepting Plaintiff to the Hospital's residency team, and permitting him to treat patients here in Michigan.

Following the $400,000 payment, Plaintiff Varun was contacted by the Hospital's Family Medicine Residency Program Administrator, Carol Samson, congratulating him on his admission to the Hospital's residency program. Thereafter, numerous events occurred that the court has detailed in its previous order, (Dkt. # 84), but ultimately on October 26, 2016, Varun Chopra became disassociated from the residency program.

Plaintiffs allege that "representatives of the Hospital telephoned Dr. Chopra's mother, Poonam Chopra, to advise that Dr. Chopra would not be permitted to begin the

residency program." (Dkt. # 1, Pg. ID 4.) Plaintiffs contend that they have never received an explanation "for the Hospital's decision to bar Dr. Chopra from commencing the residency program." (*Id.*)

On October 28, 2016, Varun Chopra emailed Dr. Hemady stating in part, "It was very disappointing to hear that I will not be starting my post graduate training at Pontiac general hospital. Unfortunately, I have only been told through second hand sources that I will not be starting the program." (Dkt. # 1-6.) Defendant Sanyam Sharma sent a letter to Varun Chopra on November 1, 2016 stating, "The purpose of this letter is to confirm that you no longer have a relationship with Pontiac General Hospital due to your withdrawal from the residency program effective November 1, 2016." (Dkt. # 1-5, Pg. ID 19.) Varun Chopra returned to Canada on November 2, 2016. Thereafter, Plaintiffs attempted to secure a refund of the $400,000, but Defendants refused to return it.

## A. Procedural History

In light of these events, Plaintiffs filed this action against Defendants and alleged claims for breach of contract, fraud in the inducement, and civil conspiracy. Plaintiffs requested leave to amend their complaint to add claims of conversion. (Dkt. # 25.) The court denied Plaintiffs' amendment as futile and also granted Defendants' Motion to Dismiss Plaintiffs' fraud and civil conspiracy claims, (Dkt. # 57), leaving only Plaintiffs' breach of contract claims. (Dkt. # 57.)  Due to egregious discovery violations by Defendants, this court further ordered, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), "that the Donated Funds in the amount of $400,000 were in fact an entry fee, and a mandatory component of the terms of the Residency Agreement, operating as a

condition precedent to Plaintiff Varun Chopra's entry into Defendants' Residency Program." (*Id.* at 1247.) Both parties filed motions for summary judgment. (Dkt. # 59, 61.)

Prior to the hearing on the parties' cross-motions for summary judgment, the court issued an order directing the parties to be prepared to address certain legal issues that the court found to be particularly unclear in the briefing and in need of elaboration. Specifically, the following subjects were included in the court's order:

> (1) whether Plaintiffs' claim for breach of contract includes allegations of an implied in fact contract or an implied in law contract which survive Defendants' motion;
>
> (2) whether Plaintiffs' complaint includes allegations that Varun Chopra was a third-party beneficiary to any such contract; and
>
> (3) whether Plaintiffs assert any claim based on agency.

(Dkt. # 75.) At request of the parties, the court converted the motion hearing to a status conference, prior to which Plaintiffs filed a motion for leave to file "Amended Complaint to Conform to Evidence Established During Discovery" and attached a proposed amended complaint. (Dkt. # 77.) Defendants filed a response opposing the motion (Dkt. # 82), and Plaintiffs filed a reply. (Dkt. # 83.)

The court denied Plaintiff's motion for leave to amend their complaint, concluding that the proposed amendment was untimely and unnecessary because it added only "further legal argument and support" for Plaintiffs' breach of contract claim. (Dkt. # 84, Pg. ID 1959.) The court denied Plaintiffs' motion for summary judgment after finding that there exists a genuine dispute of material fact as to whether Varun Chopra ever entered

into or began the residency program and if he did enter into the program, as to whether he withdrew from the program or was terminated. (Dkt. # 84, Pg. ID 1961-62.) The court also denied Defendants' motion for summary judgment after finding that there exists a genuine dispute of material fact as to whether "the Hospital had an agreement with the Chopra family," (*Id.* at Pg. ID 1963), as well as to whether "Poonam Chopra stood in an agency relationship to her son." (*Id.* at Pg. ID 1966.)

Defendants have since filed a second motion to dismiss Plaintiffs' complaint, arguing that it fails to state a claim for breach of contract. (Dkt. # 87.)

## II. STANDARD

### A. Motion for Reconsideration

In the Eastern District of Michigan, a party filing a motion for reconsideration must "demonstrate a palpable defect by which the court and the parties . . . have been misled" and "show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3); *see also In re Greektown Holdings, LLC*, 728 F.3d 567, 574 (6th Cir. 2013) (holding that the district's local rules regarding motions for reconsideration are the applicable standard rather than Rule 59(e) which governs motions to amend the judgment). Generally, "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). "A motion for reconsideration is not to be used as a means to reargue matters already argued and dispose[d] of or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." *Lyles v. Jackson*, No. 2:05-CV-70146, 2006 WL 3106204, at *1 (E.D.

Mich. Oct. 31, 2006) (internal citations and quotations omitted). However, it is also not a vehicle to raise new issues for the first time. *See Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 692 (6th Cir. 2012) ("Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal."). Instead, a party must identify a "palpable defect," that is one which "is 'obvious, clear, unmistakable, manifest or plain.'" *Buchanan v. Metz*, 6 F. Supp. 3d 730, 752 (E.D. Mich. 2014) (quoting *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004)).

## B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in her complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III. DISCUSSION

Plaintiffs previously filed a motion for leave to amend their complaint seeking to add legal citations related to specific theories in support of their breach of contract claim, namely implied breaches in law and in fact, breach to a third-party beneficiary, and a theory of breach dependent on a finding of agency for recovery. (Dkt. # 77-1.) In a March 23, 2018 order, the court found Plaintiffs' motion was untimely and concluded that "[t]o the extent Plaintiffs' motion seeks to add 'new causes of action' (Dkt. # 77, Pg. ID 1848), it will be denied as unfairly prejudicial to Defendants." (Dkt. # 84, Pg. ID 1956.) The court then explained that Plaintiffs' proposed amendment provided only a clearer statement of Plaintiffs' legal theories. (Id. at Pg. ID 1959.) The court held that Plaintiffs had adequately pled their claim for breach of contract and that an amendment at the eleventh hour was unnecessary. (*Id.* at Pg. ID 1959.) The remainder of the court's

order addressed the parties' cross motions for summary judgment. Throughout the court's analysis it addressed facts from the complaint as well as evidence in the record in support of those facts, all of which advanced Plaintiffs' various legal theories underlying their breach of contract claim. (*See e.g.,* Dkt. # 84, Pg. ID 1963-66.)

Defendants now challenge the court's holding and argue that Plaintiffs' complaint fails to state a claim for breach of contract, specifically for "agency, third party beneficiary to a contract, and implied contracts under Michigan law." (Dkt. # 87, Pg. ID 2004.) Defendants directly attack the court's March 23, 2018 order, asserting that it is "manifestly unjust and is a clear error of law." (*Id.* at Pg. ID 2027.) As Plaintiffs state, "Defendant's failure to call its motion to dismiss what it really is—a reconsideration request—is flatly inexcusable." (Dkt. # 88, Pg. ID 2034.) The court will construe the motion as one for reconsideration.

To begin, Defendants' May 7, 2018 motion, whether construed properly as a motion for reconsideration or as a motion to dismiss, is untimely. *See* E.D. Mich. L.R. 7.1(h)(3) (providing that motions for reconsideration must be filed within 14 days after the entry of order) and Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that responsive pleadings containing defenses such as failure to state a claim must be filed within 21 days of service of the complaint). For this reason alone, the court may deny the motion.

Nevertheless, the court has considered the motion and concludes that Defendants have identified no palpable defect in its prior order and will now clarify and reaffirm that order. Taking the factual allegations in Plaintiffs' complaint as true, which the court must do for purposes of a motion to dismiss, Plaintiffs' complaint states a

plausible claim for breach of contract supported by theories of agency, third-party beneficiary, and implied contracts under Michigan law.

In Michigan, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 830 (Mich. 2016). "[T]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v. Massachusetts Mut. Life Ins. Co.*, 295 N.W.2d 50, 52–53 (Mich. 1980); *see also Lawrence v. Will Darrah & Assocs., Inc.*, 516 N.W.2d 43, 48 (Mich. 1994). There are four principles of Michigan contract law that are particularly relevant to Plaintiffs' claim—agency, contract implied in fact, liability to third-parties, and contract implied in law.

**A. Agency**

"The term 'agency' includes every relation in which one person acts for or represents another by his or her authority." 1 Mich. Civ. Jur. Agency § 4. "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v. Peach*, 491 N.W.2d 278, 280 (Mich. App. 1992). An agent may be "authorized to conduct a single transaction or a series of transactions not

9

involving continuity of service" and may also "bind a principal by contracts or conveyances that he is authorized to make." *People v. Konrad*, 536 N.W.2d 517, 522 n 7 (Mich. 1995) (internal citation and quotations omitted). "[F]undamental to the existence of an agency relationship is the right to control the conduct of the agent, with respect to the matters entrusted to him." *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998) (internal citation omitted); *see also Goldman v. Cohen*, 365 N.W.2d 754, 756 (Mich. 1985) ("It is a requisite of an agency relationship that the principal has the right to control the conduct of the agent with respect to matters entrusted to him.") (internal quotation and citation omitted).

An agency may exist even absent an express declaration. "An implied agency must be an agency in fact; found to be so by reasonable deductions, drawn from disclosed facts or circumstances. While it cannot exist contrary to the express will of an alleged principal, it may spring from acts and circumstances within his control and permitted over a course of time by acquiescence or in recognition thereof." *Weller v. Speet*, 267 N.W. 758, 758 (Mich. 1936). The existence of an agency may be deduced from the course of the parties' dealings. *See L.A. Walden & Co. v. Consol. Underwriters*, 25 N.W.2d 248, 249 (Mich.1946).

The existence and scope of an agent's authority "may be either actual or apparent." *Alar v. Mercy Mem'l Hosp.*, 529 N.W.2d 318, 323 (Mich. App. 1995) (citing *Meretta v. Peach*, 491 N.W.2d 278 (1992)). "Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency relationship

exists. However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent." *Id.* "The existence and extent of an agency may be inferred from attending facts and circumstances, and if there be in proof facts from which an agent's authority can be fairly and reasonably inferred, the question becomes one for a jury." *Douglas v. Ins. Co. of N. Am.*, 184 N.W. 539, 541 (Mich. 1921).

Plaintiffs' complaint states that Varun Chopra engaged in communications with Defendants for the purpose of pursuing medical residency and that

> Dr. Chopra's parents assisted Dr. Chopra in this regard . . . Dr. Chopra and Dr. Chopra's parents reviewed the terms of the Residency Agreement. However, they were advised that the Hospital would not sign the Residency Agreement unless and until the Hospital was paid $400,000.00 US. Dr. Chopra's parents raised the required funds and on the day they paid the funds to the Hospital, [Dr. Chopra] signed the Residency Agreement.

(Dkt. # 1, Pg. ID 2-3.) The complaint indicates that Defendants accepted the funds and admitted Plaintiff Varun Chopra to their residency program. (*Id.*) The complaint goes on to state

> [O]n October 26, 2016, representatives of the Hospital telephoned Dr. Chopra's mother, Poonam Chopra, to advise that Dr. Chopra would not be permitted to begin the residency program . . . No explanation has ever been given to Dr. Chopra or to Dr. Chopra's parents for the Hospital's decision to bar Dr. Chopra from commencing the residency program, despite the fact that Dr. Chopra and his parents have repeatedly sought to find out the reason for the Hospital's action.

(*Id.* at Page ID 4.)

Assuming the truth of these facts, the Hospital "undertook communications" with Varun and his parents for the purpose of furthering Varun's pursuit of a medical

residency. (Dkt. # 1, Pg. ID 2-3.) According to the complaint, a $400,000 payment was required before the Hospital would sign the residency agreement and accept Varun Chopra into its program. (*Id.* at 3.) The Hospital treated the Chopra's payment as one made on behalf of Varun and in fulfillment of Varun's required payment because its representative signed the Residency Agreement. (Dkt. # 84, Pg. ID 1965-66.) Per the complaint, the Hospital contacted Mrs. Chopra directly regarding Varun's departure from the program, i.e., the termination of the contractual relationship. These facts provides a reasonable inference that Varun gave his parents authority to act on his behalf, as his representatives, in his dealings with Defendants. *Iqbal*, 556 U.S. at 678. Accepting the facts in the complaint as true, they plausibly give rise to a claim for breach of contract where Varun Chopra is entitled to relief based on an agency relationship with his parents. *See Douglas*, 184 N.W. at 541 (holding that the existence of an agency may be inferred from the attending facts and circumstances); *Weller*, 267 N.W. at 758 (explaining that an implied agency "may spring from acts and circumstances within [the principal's] control and permitted over a course of time by acquiescence or in recognition thereof").

Defendants confuse the facts. Defendants argue that Varun cannot be the agent of his parents regarding his residency because such an agency would violate the "corporate practice of medicine doctrine" because it would cause laymen to "control a physician." (Dkt. # 87, Pg. ID 2014.) But the facts as presented by Plaintiffs provide a reasonable inference that his parents acted as *his* agents, not that he served as their agent during his work at the Hospital. Therefore, Plaintiffs' complaint presents no

problem under the corporate practice of medicine doctrine. The court will deny

Defendant's motion to dismiss in this regard.

## B. Contract Implied in Fact

A contract may be express or implied. "There are two kinds of implied contracts;

one implied in fact and the other implied in law. The first does not exist, unless the

minds of the parties meet, by reason of words or conduct. The second is quasi or

constructive, and does not require a meeting of minds, but is imposed by fiction of law,

to enable justice to be accomplished, even in [a] case [where] no contract was

intended." *Cascaden v. Magryta*, 225 N.W. 511, 512 (Mich. 1929); see also *City of

Detroit v. City of Highland Park*, 39 N.W.2d 325, 334 (Mich. 1949) (noting that contracts

implied in law are also known as constructive or quasi contracts).

A contract implied in fact "is to be gathered by implication or proper deduction

from the conduct of the parties, language used, or things done by them, or other

pertinent circumstances attending the transaction." *Tustin Elevator & Lumber Co. v.

Ryno*, 129 N.W.2d 409, 414 (Mich. 1964) (quoting *Miller v. Stevens*, 195 N.W. 481, 482

(Mich. 1923)). "Courts recognize implied contracts where parties assume obligations by

their conduct." *Williams v. Unit Handling Sys. Div. of Litton Sys., Inc.*, 449 N.W.2d 669,

670 (Mich. 1989). The court reviews "all the facts and circumstances to evaluate the

intent of the parties" in determining whether a reasonable juror could find a contract

implied in fact. *Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 273 (Mich. 1991).

Plaintiffs' complaint states that Varun Chopra's parents undertook

communications with the Hospital because "they were keenly interested in having their

son pursue a residency in this country." (Dkt. # 1, Pg. ID 3.) According to the complaint, the Chopras attended the meeting at which the contract regarding Varun's residency was formed. During the meeting, "Dr. Chopra's parents reviewed the terms of the Residency Agreement and were satisfied with its terms." (Dkt. # 1, Pg. ID 3.) The Hospital advised Dr. Chopra *and* his parents that it would not sign the agreement absent a payment of $400,000. (*Id.*) The complaint then explains that "Dr. Chopra's parents raised the required funds," (*Id.* at Pg. ID 3), and paid the Hospital "as a condition of their son's participation in the residency program." (*Id.* at Pg. ID 5.) Per the complaint, the Hospital contacted Mrs. Chopra directly "to advise that Dr. Chopra would not be permitted to begin the residency program," meaning she was advised of the termination of the contractual relationship. (*Id.* at Pg. ID 4.) These facts, taken as true, provide a reasonable inference that the Hospital is liable for breaching a contract implied in fact with the Chopras. *Iqbal*, 556 U.S. at 678.

Defendants try to avoid the effect of a contract implied in fact claim by invoking Michigan's statute of frauds, which provides that a contract that "by its terms, is not to be performed within 1 year from the making of the agreement" must be in writing and "signed with an authorized signature by the party to be charged with the agreement." Mich Comp. Laws § 566.132(a).

In presenting this argument, Defendants do an about face from their earlier briefing and argue that the residency program is three years long and therefore, the alleged contract implied in fact between the Hospital and the Chopras could not have been completed within a year. (Dkt. # 87, Pg. ID 2021; s*ee* Dkt. # 59, Pg. ID 1271) (in

which Defendants argue that the $400,000 was for only entry into the residency program, not completion of it, and therefore, the Hospital performed any obligation it had within months of receiving payment). As a result, Defendants conclude that the alleged contract is subject to the statute of frauds requirement. Consequently, Defendants argue that the alleged implied contract is void because it was not in writing nor signed by Varun's parents.

Nothing in Plaintiffs' complaint indicates that the alleged implied contract between the Chopras and the Hospital could not have been completed within a year. According to the complaint, the $400,000 was paid to obtain a signature on the Residency Agreement which would allow Varun "to participate in the residency program at the Hospital." (*Id.*) The acts that constitute participation in the program should be interpreted in light of the residency agreement's terms. As noted in the court's prior order, the residency agreement was "for the year." (Dkt. # 84, Pg. ID 1967) (citing Dkt. # 1-3, Pg. ID 13.) The agreement dictates that "the year" refers to the period "beginning November 1, 2016 and ending October 31, 2017." (Dkt. #1-3, Pg. ID 13.) This period is "within a year." Therefore, the facts as alleged support not only a plausible claim that a contract implied in fact existed between the Chopras and the Hospital, but also that said contract could have been completed within one year. The court will deny Defendants' motion to dismiss.

### C. Third Party Beneficiary

Generally, "the only liability [a contracting party] has to an injured third-party [i.e., a non-contracting party] is with respect to negligent performance of his or her

15

contractual duty." *Williams v. Polgar*, 215 N.W.2d 149, 156-57 (Mich. 1974) (explaining that "[s]ince the legal duty which, when breached, gives rise to a tort cause of action, springs from the contractual duty imposed" the contracting party has a limited legal obligation to non-contracting parties). Absent a tort cause of action for the negligent performance of a contractual duty, a litigant must have been party to the contract to claim economic damages for an alleged breach of a contract. *See Downriver Internists v. Harris Corp.*, 929 F.2d 1147, 1149 (6th Cir. 1991) (applying Michigan law). However, by statute Michigan has created another basis for a breach of contract action by a third-party.

An intended third-party beneficiary may bring a claim when a contractual promise in his favor has been breached. *See Thornberry v. Grand Trunk W. R.R. Inc.*, 776 F. Supp. 2d 453, 459 (E.D. Mich. 2011) (applying Michigan law). In relevant part, Mich. Comp. Laws § 600.1405 states,

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

"Importantly, the plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has 'undertaken to give or to do or refrain from doing something *directly* to or for said person.'" *Brunsell v. City of Zeeland*, 651 N.W.2d 388,

390 (Mich. 2002) (emphasis in original) (citing Mich. Comp. Laws § 600.1405(1)). "By using the modifier 'directly,' the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Schmalfeldt v. N. Pointe Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003) (internal apostrophes added).

In assessing Defendants' motion for summary judgment, the court concluded that if the jury found a contract implied in fact between the Chopras and the Hospital, the evidence presented a genuine question as to whether Varun Chopra was an intended beneficiary of that contract. (Dkt. # 84.) Defendants now challenge whether Plaintiffs have adequately pled a third party beneficiary theory.

Plaintiffs' complaint contains direct and inferential factual allegations respecting all the material elements to sustain recovery under a third-party beneficiary theory. *See Boland*, 682 F.3d at 534. Plaintiffs allege that Mr. and Mrs. Chopra participated in discussions with Defendants because "they were keenly interested in having their son pursue a residency in this country." (Dkt. # 1, Pg. ID 3.) The complaint also details that Varun could not "participate in the residency program" without a signed residency agreement and that said signature could not be obtained without a $400,000 payment. (*Id.*) Accordingly, the Chopras paid $400,000 to the Hospital to obtain a signature on the residency agreement—an agreement that requires the Hospital to provide a residency training program for the resident, Varun Chopra. (Dkt. # 1-3, Pg. ID 13.) The complaint states Plaintiffs paid the funds "to the Hospital as a condition of their son's participation

in the residency program." (Dkt. # 1, Pg. ID 5.) Plaintiffs have plausibly alleged facts to show that Defendants made "an express promise to act for the benefit of [Varun Chopra]." *Kisiel v. Holz*, 725 N.W.2d 67, 69-70 (Mich. Ct. App. 2006) (quoting *Dynamic Constr. Co. v. Barton Malow Co.*, 543 N.W.2d 31 (Mich. Ct. App. 1995)).[2] The court will deny Defendants' motion to dismiss.

### D. Contract Implied in Law

"Contracts implied in law are not true contracts, but instead are quasi-contracts implied by courts *when a party retains money* or benefits which in justice and equity belong to another." *PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 784 (E.D. Mich. 2015) (emphasis added) (applying Michigan law) (internal quotation and citation omitted). "The essential elements of a quasi contractual obligation [one implied in law], upon which a recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain." *Moll v. Wayne Cty.*, 50 N.W.2d 881, 883 (Mich. 1952) (quoting *Herrmann v. Gleason*, 126 F.2d 936, 940 (6th Cir. 1942)) (overruled in part on other grounds by *Brown v. State, Dep't of Military Affairs*, 191 N.W.2d 347, 351 (Mich. 1971). A finding of an implied contract in law is a remedy "under the equitable doctrine of unjust enrichment . . . with an implied obligation to pay for benefits received to ensure that exact justice is obtained." *Mich.Educ. Empls. Mut. Ins. Co. v. Morris*, 596 N.W.2d 142, 151 (Mich. 1999) (internal

---

[2] Defendants argue that Michigan law does not permit third party beneficiaries to contracts implied in law. Assuming Defendants' position to be correct, they provide no argument that Michigan does not permit third-party beneficiaries to contracts implied in fact.

citations and quotations omitted.) "Restitution may be imposed under the equitable theory of implied contract or quasi-contract to prevent the unjust enrichment of one party at the expense of another." *Hofmann v. Auto Club Ins. Ass'n*, 413 N.W.2d 455, 457 (Mich. App. 1987) (citing 66 Am Jur 2d, Restitution & Implied Contracts, §§ 1-3, p. 942-46).

Defendants properly state that "[a] contract may be implied in law where there is a receipt of a benefit by a defendant from a plaintiff and retention of the benefit is inequitable, absent reasonable compensation." (*See* Dkt. # 87, Pg. ID 2023) (quoting *Decker v. City of Wyandotte*, No. 236372, 2002 WL 31956958, at *6 (Mich. Ct. App. Dec. 20, 2002) (quoting *In re McKim Estate*, 606 NW2d 30 (Mich. Ct. App. 1999))). Nevertheless, Defendants assert that Plaintiffs' complaint does not "include any plausible allegations of fact to support a claim for implied contracts." (*Id.* at Pg. ID 2024.)

Defendants recognize that Plaintiffs' complaint "allege[s] that the plaintiffs' payment to the Hospital was for the Hospital to sign the Residency Agreement so Varun Chopra could participate in the Hospital's Residency Program." (*Id.* at Pg. ID 2025.) The complaint states that Varun Chopra was barred "from commencing the residency program" (Dkt. # 1, Pg. ID 4.) and that "the Hospital had decided he could not participate in the residency program." (*Id.*) The complaint also states that the Hospital has ignored requests for return of the $400,000 payment and "still holds the funds." (*Id.* at Pg. ID 5.) Defendants undisputedly received a benefit from Plaintiffs—$400,000—and Defendants have provided no explanation for why retention of that benefit would not be

inequitable under the facts alleged in the complaint.

## IV. CONCLUSION

Plaintiffs' complaint goes beyond "naked assertions," and provides the "further factual enhancement" necessary to support their breach of contract claim. *Iqbal*, 556 U.S. at 678. The facts alleged in Plaintiffs' complaint if taken as true, do more than present the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The court is able "to draw the reasonable inference that [D]efendant[s] [are] liable for the misconduct alleged" based on the facts contained in Plaintiffs' complaint. *Id.* at 678. ). Plaintiffs' complaint contains sufficient "allegations respecting all the material elements to sustain recovery" under theories of agency, third party beneficiary, and implied contracts. *Boland*, 682 F.3d at 534. Defendants have identified no palpable defect in the court's prior opinion and order, which concluded that Plaintiffs have adequately alleged a plausible claim for breach of contract based on theories of express contract, contract implied in fact, and contract implied in law. Likewise, the facts supporting Plaintiffs' claim "plausibly give rise to an entitlement to relief" based on theories of agency and/or third-party beneficiary. *Id.* at 679. Accordingly,

IT IS ORDERED that Defendants' Second Motion to Dismiss (Dkt. # 87) is DENIED.

IT IS FURTHER ORDERED that the parties are DIRECTED to appear for an in-person status conference on **Thursday September 6, 2018 at 3:00 pm at the United States District Court, 231 W Lafayette, Detroit, Michigan , Room 1061**

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 29, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 29, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

s/Cleland/JudgesDesk/C2Orders/16-13915.CHOPRA.DenyDismiss2.aju